NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

---------------------------------------------------------------X
In re:                                                              Bankruptcy Case No. 15-21907

Angelo Francis Nucci,                                               Chapter 7

      Debtor.
---------------------------------------------------------------X
Bunce Atkinson, Trustee for Debtor Estate of
Angelo Francis Nucci,

      Plaintiff,

vs.                                                                 Adversary No. 16-1303

Angelo Francis Nucci,
                                                                              **MEMORANDUM OPINION**

      Defendant.

---------------------------------------------------------------X

**APPEARANCES**

Attorney for Plaintiff
Bunce Atkinson, Esquire
Atkinson & DeBartolo
2 Bridge Avenue, PO Box 8415
Building 2, 3rd Floor
Red Bank. New Jersey 07701

Attorney for Defendant
Carol Knowlton, Esquire
Gorski & Knowlton PC
311 Whitehorse Avenue
Suite A
Hamilton, New Jersey 08610

**HONORABLE KATHRYN C. FERGUSON, USBJ**

The Chapter 7 Trustee for Angelo Francis Nucci filed a one-count complaint seeking to deny the debtor a discharge under § 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5). The court tried the case on July 20, 2017, and the parties were given an opportunity to file proposed findings of fact and conclusions of law. Mr. Nucci filed his post-trial submission on August 1, 2017 and the Trustee filed his on August 2, 2017. The court makes the following findings of fact and conclusions of law.

## Findings of Fact

Angelo Francis Nucci filed a voluntary Chapter 7 bankruptcy petition on June 25, 2015. Bunce D. Atkinson was appointed as the trustee, and held a meeting of creditors pursuant to 11 U.S.C. § 341(a) on August 4, 2015. At that meeting of creditors, Mr. Nucci testified under oath that the information contained in his bankruptcy petition was true, and that there were no additions, deletions, corrections or omissions. On Schedule A of his bankruptcy petition, Mr. Nucci listed no interest in real property.[1]

Mr. Nucci testified at his meeting of creditors that he has never owned real property.[2] In fact, Mr. Nucci previously owned a home with his wife, Charlene Cerami-Nucci, located at 3272 Churchill Drive, Toms River, NJ ("Toms River property").[3] The Toms River property had been deeded to Angelo and Charlene Nucci on November 1, 1984 from her parents, Charles and Louise Cerami. In 2001, the Nuccis deeded the Toms River property from themselves, jointly, to Charlene Cerami-Nucci, solely. In April 2009, Charlene Cerami-Nucci sold the Toms River

---

[1] Ex. P-1
[2] Ex. P-48
[3] Ex. P-25

2

property to third party purchasers for $1,260,000.[4] The Nuccis maintained the Toms River property as their marital residence from November 1984 until it was sold in April 2009.

In December 2009, Charlene Cerami-Nucci purchased a property at 50 Bellevue Avenue, Rumson, NJ for $2,125,000.[5] Some of the proceeds from the sale of the Toms River property were used for the purchase of the Rumson property. The Nuccis currently reside at the Rumson property, and Mr. Nucci listed the Rumson address as his residence on his bankruptcy petition.

In Schedule B to the bankruptcy petition, Mr. Nucci listed an interest in Chanree Construction value "0.00", and an interest in an educational IRA, value "unknown." No other IRA, pension plan, or profit sharing plan was listed. At the time he filed his petition, Mr. Nucci did not have an interest in an educational IRA, but he did have four traditional IRAs with a value totaling $1,162,075.[6]

In response to the question on the Statement of Financial Affairs that asks a debtor to list any income other than from employment or operation of business during the two years preceding the commencement of the case, Mr. Nucci listed a $52,093 distribution from an IRA in 2013, but listed no distributions for 2014. In 2014, Mr. Nucci received $345,900 in distributions from one of his IRAs.[7] Mr. Nucci transferred all of those distributions to his wife. At Mr. Nucci's direction, his wife paid some of the debts of his defunct corporation from those funds. In response to the question on the Statement of Financial Affairs about whether any transfers were made outside the ordinary course of business, Mr. Nucci responded "none.

---

[4] Despite having transferred the property solely to Charlene in 2001, Angelo Nucci signed the 2009 Deed as a grantor.
[5] Ex. P-27
[6] Ex. P-21, 22, 23, 24
[7] Ex. P-7, 8, 9, 10

After this adversary complaint was filed, an amended petition and Statement of Financial Affairs was filed on behalf of Mr. Nucci. Those amendments corrected some, but not all, of the omissions. Mr. Nucci testified that he did not review those amendments before they were filed.

## Conclusions of Law

It is well-settled law that denial of a debtor's discharge is a drastic remedy; therefore, section 727 must be construed strictly in favor of the debtor.[8] The burden of proof in a denial of discharge action is on the objecting party.[9] As the objecting party, the Trustee must prove each element by a preponderance of the evidence.[10]

**A. 11 U.S.C. § 727(a)(4)(A)**

One of the causes of action in the complaint is predicated on § 727(a)(4)(A), which provides that the court shall deny the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account." To deny a discharge under §727(a)(4)(A) of the Bankruptcy Code, a plaintiff must establish by a preponderance of evidence that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.[11] The Trustee argues that Mr. Nucci should be denied a discharge because he made false statements under oath in his bankruptcy petition and in testimony at the meeting of creditors.

---

[8] *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge … is an extreme step and should not be taken lightly")
[9] *Haupt v. Belonzi (In re Belonzi)*, 476 B.R. 899 (Bankr. W.D Pa. 2012); s*ee also*, Fed. R. Bankr. P. 4005 ("on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.")
[10] *Grogan v. Garner*, 498 U.S. 279, 285 (1991)
[11] *See, e.g.*, *In re Georges*, 138 F. App'x. 471 (3d Cir. 2005); *In re Hannan*, 477 B.R. 603, 609 (Bankr. W.D. Pa. 2012)

4

The first false statement the Trustee points to is Mr. Nucci's answer of "none" in Schedule A of the bankruptcy petition. Schedule A directs a debtor to "list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate." The basis of Trustee's position that Mr. Nucci's answer is false is three-fold: 1) that the Rumson property is the marital residence; 2) that money from the sale of the Toms River property, once owned by Mr. Nucci, was used for the purchase of the Rumson property; and 3) that Mr. Nucci used his income and the assets of his company to pay the carrying costs for the Rumson property. Mr. Nucci argues that even if any of that were true, he did not list the Rumson property in Schedule A on the advice of counsel. Although not specifically stated, the court presumes that Mr. Nucci's position is that the advice of counsel defense negates the fourth element of a § 727(a)(4)(A) cause of action, *i.e.*, that Mr. Nucci acted with fraudulent intent.

The Third Circuit has held that "the advice of counsel may provide an excuse for an inaccurate or false oath."[12] This defense is a limited one; it is only available when the advice relied upon is legal advice.[13] The advice of counsel defense "is not an impenetrable shield" and "is not a defense when it is transparently clear that the advice is improper"[14] because a "debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for a statement which he made under oath."[15] Another feature of the defense is that

---

[12] *In re Georges*, 138 F. App'x 471 (3d Cir. 2005)
[13] *In re Topper*, 229 F.2d 691 (3d Cir. 1956)("It is entirely understandable that a bankrupt may be guided by the opinion of his counsel as to what comes within the meaning of the provisions of the Bankruptcy Act."); *In re Crest by the Sea, LLC*, 522 B.R. 540 (Bankr. D.N.J. 2014) (holding defense was not applicable because advice was not legal advice); *In re Dolata*, 306 B.R. 97 (Bankr. W.D. Pa. 2004) (holding defense applicable when necessary to ascertain what needs to be disclosed under the bankruptcy provisions).
[14] *In re Dubrowsky*, 244 B.R. 560 (E.D.N.Y. 2000)
[15] *Scimeca v. Umanoff*, 169 B.R. 536 (D.N.J. 1993), *aff'd*, 30 F.3d 1488 (3d Cir. 1994)

it requires good faith reliance on the advice, which, in turn, requires full disclosure of all relevant facts.[16] As the Third Circuit explained:

> It must be remembered that the advice of counsel defense is meant to be available only to those who, after full and honest disclosure of the material facts surrounding a possible course of action, seek and obtain the advice of counsel on the potential legality of their actions. The defense is not designed to insulate illegal conduct. Rather, the basis for the defense "is that, in relying on counsel's advice, [a] defendant lacked the requisite intent to violate the law."[17]

Additionally, the defense fails as a matter of law if "the information sought is so straightforward that it requires no legal explanation for an individual to fully appreciate or comprehend the nature of the inquiry, Debtor cannot disclaim all responsibility for statements that he made under the penalty of perjury."[18]

In *Georges*, the Third Circuit upheld the advice of counsel defense finding that the debtor harbored no actual intent to defraud when she omitted marital property from her bankruptcy schedules.[19] The *Georges* court noted that the debtor acted in reliance on the advice of her bankruptcy attorney after full disclosure, that the advice was in the nature of legal advice, and that she made her Chapter 7 trustee aware of the omission. *Georges* is instructive here because both Mr. Nucci and his former bankruptcy counsel William Oliver, Esq. testified that Mr. Oliver was fully aware of the fact that the Rumson property was the marital home, but advised Mr. Nucci that it did not need to be included on the petition because the deed was solely in his wife's name. Additionally, as in *Georges*, the existence of the Rumson property was not hidden from the Trustee; it was the address Mr. Nucci listed in his bankruptcy petition. Given that the advice

---

[16] *In re Landmark Distributors, Inc.* 189 B.R. 290 (Bankr D.N.J. 1995), *citing, United States v. Martorano*, 767 F.2d 63 (3d Cir. 1985)
[17] *United States v. Traitz,* 871 F.2d 368, 382 (3d Cir. 1989)
[18] *In re Castellano*, 2011 WL 3236068, at *4 (Bankr. N.D.N.Y. July 26, 2011)
[19] 138 F. App'x 471, 472 (3d Cir. 2005)

not to list the Rumson property on Schedule A was legal in nature, it was based on full disclosure of all relevant facts, and there are no countervailing facts that would indicate lack of good faith, the court finds that the advice of counsel defense applies to that asset. Accordingly, the court finds that with regard to the Rumson property the Trustee has failed to prove one of the elements of a § 727(a)(4) cause of action, *i.e.,* that the debtor made the false statement with fraudulent intent.

Not all of Mr. Nucci's numerous omissions from his bankruptcy petition and false statements at his meeting of creditors are shielded by the advice of counsel defense. In a case factually similar to this one, this court found on summary judgment that a debtor who had signed her bankruptcy petition in blank displayed reckless indifference to the truth that rose to the level of fraudulent intent. In upholding that decision on appeal, the District Court found:

> [the debtor] signed her name under penalty of perjury on the bankruptcy petition knowing that she was signing it in blank. The bankruptcy petition itself should have alerted [her] to the fact that she was certifying that the information contained in the document was true and correct. … [S]he has not established how the advice of [her attorney] - his instruction to sign the petition in blank - was the type of legal advice to which the limited defense of advice of counsel may apply. In addition, [the debtor] failed to cite any relevant authority, Third Circuit or otherwise, for the proposition that signing a bankruptcy petition in blank upon the instruction of counsel constitutes the type of advice contemplated by this defense.[20]

In this case, it is unclear from the testimony whether Mr. Nucci signed the petition in blank or merely did not review its contents before signing it. Under either scenario, Mr. Nucci displayed a dereliction of his duties as a debtor that rises to the level of fraudulent intent for purposes of § 727(a)(4). Mr. Oliver initially testified that he went over every question on the petition, schedules, and Statement of Financial Affairs with Mr. Nucci, but later testified that he probably

---

[20] *In re Larkin*, 2015 WL 1472115 at *3 (D.N.J. Mar. 31, 2015)

did not go over every question in the Statement of Financial Affairs. Mr. Nucci testified that he was uncertain when he signed the petition or what was contained in it at the time, he was certain that all of the information contained in the petition, schedules and Statement of Financial Affairs was filled out by his attorney and that he merely relied on his attorney. Mr. Nucci testified that he does not recall being given a copy of his filed petition prior to his meeting of creditors, nor did he request one. A cursory review of the petition that Mr. Oliver filed on behalf of Mr. Nucci would have readily revealed certain factual errors, such as the inclusion of a non-existent educational IRA and the failure to list any of his four traditional IRAs. The fact that Mr. Oliver informed Mr. Nucci that IRAs are not property of the bankruptcy estate is of no moment. Schedule B simply asks if the debtor has **any** IRAs – a factual question that Mr. Nucci did not need an attorney to interpret for him. Mr. Oliver, although remarkably cavalier about the amount of detail that was required, was of the opinion that IRAs, even if not part of the bankruptcy estate, needed to be listed in the petition.[21] That belief is demonstrated by the fact that Mr. Oliver listed an IRA on the original petition, albeit incorrectly listed as an educational IRA instead of a traditional IRA.

Another false statement the Trustee points to is Mr. Nucci's failure to include all of the companies he had an interest in over the past six years. The only company listed in the

---

[21] Mr. Oliver testified regarding IRAs that "you don't really give a lot of details on that because it's not really part of the Estate." That is an alarming statement because Schedule B instructs a debtor to list: "Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars." Those particulars should include the name of the financial institution where the account is held, the account number, and the balance as of the most recent statement prior to filing. Moreover, all IRAs are not necessarily excluded from property of the estate. *See, e.g., Clark v. Rameker*, 134 S. Ct. 2242 (2014) (funds held in an inherited IRA are not "retirement funds" within the meaning of § 522(b)(3)(C)); *In re Andolino*, 525 B.R. 588 (Bankr. D.N.J. 2015) (an inherited IRA only remains a qualified trust excluded from the estate if certain IRC guidelines are adhered to)

bankruptcy petition was Chanree Construction. Question 18 in the Statement of Financial Affairs asks if the debtor had an interest in any corporations within the preceding six years. Mr. Nucci responded "none" when in fact he owned an 8% interest in Catania 201 LLC within that time frame. While an 8% interest might not seem significant, the test for materiality is quite low. A false statement made under oath is material if it bears a relationship to the debtor's assets, business dealings or the disposition of property.[22] The failure to list all of the IRAs and the interest in Catania 201 LLC satisfies the materiality test.

     A person seeking bankruptcy protection is required to sign under penalty of perjury in no fewer than six places on the bankruptcy petition and accompanying documents. The language alerting a debtor that he or she is making a declaration under penalty of perjury is sometimes in bold type, sometimes in all capital letters, sometimes centered on the page and set-off from other language, and sometimes all three of those devices are simultaneously used to draw the signer's attention to the serious nature of the act he or she is undertaking by seeking bankruptcy protection. It is essential to the proper functioning of the bankruptcy system for a debtor to take a degree of personal responsibility and to act as the ultimate fact checker for his bankruptcy petition. Omissions of requested information would be relatively simple for a debtor to spot, but less obvious to the attorney. For that reason, courts have consistently held that "Debtors have an independent obligation to verify that the information in their petition, schedules and Statement of Financial Affairs is accurate."[23] It would be a perversion of the advice of counsel defense to allow it to be used to shield a debtor with regard to information missing from a petition signed in blank or not read before being signed.

---

[22] *Retz v. Samson*, 606 F.3d 1189 (9th Cir. 2010)
[23] *In re Pettey*, 288 B.R. 14 (Bankr. D. Mass. 2003)

The quid pro quo for a discharge is full and complete disclosure. The entire bankruptcy system depends on debtors individually taking their obligations of accurate and complete disclosure seriously. Virtually all courts hold that a reckless disregard of both the serious nature of the information sought in a bankruptcy petition and the necessary attention to detail and accuracy in answering rises to the level of fraudulent intent necessary to bar a discharge.[24] The "I relied upon my lawyer" type of defense has been rejected time and time again by courts.

In *Mitchell*, the Fifth Circuit upheld a denial of discharge, finding that the debtors' defense that they filled out the forms in great haste and did not bother going over the forms that their attorney had prepared to ensure they were accurate was "the essence of a reckless disregard for the truth."[25] Similarly in *Sims*, the debtors' asserted that they merely glanced over the petition but didn't really understand it.[26] The court denied a discharge under § 727(a)(4) finding that the debtors' cavalier disregard for the truth was inconsistent with the relief to be afforded the honest debtor. The *Sims* court emphasized that "[a]ll assets and transactions must be reported, even if the assets are worthless or unavailable to creditors."[27] So, a claim that the non-disclosure of the four traditional IRAs is meaningless because they are not property of the estate is unavailing.

In addition to the false statements in the schedules and Statement of Financial Affairs, Mr. Nucci presented false testimony at his meeting of creditors.[28] The first and most obvious false statement under oath was that Mr. Nucci answered "none" when asked if he had any

---

[24] *See, e.g.*, *In re Mondore*, 326 B.R. 14 (Bankr. W.D.N.Y. 2005)
[25] *In re Mitchell,* 102 F. App'x 860, 863 (5th Cir. 2004)
[26] *In re Sims*, 148 B.R. 553 (Bankr. E.D. Ark. 1992); *see also*, *In re Hatton*, 204 B.R. 477 (E.D. Va. 1997) (finding that a cavalier attitude toward the Bankruptcy Code's disclosure requirements constitutes a reckless indifference to the truth which is the functional equivalent of fraudulent intent)
[27] *Sims* at 557
[28] *In re Yonkers*, 219 B.R. 27 (Bankr. E.D. Ill. 1997)( the testimony a debtor gives at the meeting of creditors is under oath for purposes of § 727(a)(4))

changes to the petition. Mr. Nucci testified at trial that he had not seen the filed petition prior to the meeting of creditors; therefore, that statement is necessarily false. When asked by the Trustee how he was meeting his living expenses, Mr. Nucci stated that he was receiving help from his in-laws. Mr. Nucci neglected to mention that he was also drawing hundreds of thousands of dollars from an IRA to meet his living expenses.[29] When asked at the meeting of creditors if he had made any payments outside of the ordinary, Mr. Nucci neglected to mention that he had instructed his wife to make over $100,000 in payments to creditors of his defunct construction company.

Perhaps most significantly, when the Trustee asked Mr. Nucci at the meeting of creditors if he had ever owned real property he said "no." Mr. Nucci's explanation for that admittedly false statement was that he was nervous at the meeting of creditors and thought that the Trustee was asking him if he currently owned real property. That justification is utterly implausible given the sequence of questioning by the Trustee. The Trustee first asked Mr. Nucci if he now owned or had ever owned 50 Bellevue Ave, Rumson, NJ, which is the address listed on his bankruptcy petition. Mr. Nucci testified that he had never owned that property, and that it was owned by his wife Charlene. The Trustee then asked whether Charlene owned any property before she purchased the Rumson property. Mr. Nucci testified that she owned the property at 3268 Churchhill Drive in Toms River, and that it had been sold to purchase the Rumson property. The Trustee then asked if Charlene was the sole owner of the Toms River property and Mr. Nucci said "yes." It was only then that the Trustee asked Mr. Nucci if he had ever owned any real

---

[29] While it might be argued that the failure to list the $345,900 withdrawn from his IRA in 2014 in the Statement of Financial Affairs falls under the advice of counsel defense (a defense that is seriously undercut by the fact that the IRA withdrawals from 2013 are listed) that defense is clearly inapplicable to a straightforward factual question from the Trustee about how Mr. Nucci was making ends meet.

property. In that context, Mr. Nucci's response of "no" could not reasonably be construed as an innocent mistake.

Collectively, the false testimony at the meeting of creditors and the missing or misleading statements on the schedules and Statement of Financial Affairs leads inexorably to the conclusion that Mr. Nucci's actions were undertaken with fraudulent intent. The court finds that the Trustee has established by a preponderance of the evidence all of the elements of a § 727(a)(4) cause of action.

## Conclusion

The court finds in favor of the Trustee on the § 727(a)(4) cause of action. Given this ruling, the court does not need to rule on the additional causes of action alleged in the complaint. The Trustee should submit an order in accordance with this opinion.

>  */s/ Kathryn C. Ferguson*
>  KATHRYN C. FERGUSON
>  US Bankruptcy Judge

Dated: September 25, 2017